THE MYSTIC MILLING COMPANY, Appellant, v. CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, ET AL.

**Mandamus:** SWITCHING CARS: DEMAND AND REFUSAL. Mandamus
**1** will not be granted to compel a railroad company to switch cars onto a private track for the benefit of a private interest, where a refusal to perform a legal duty in that respect is not shown; and generally in such cases there must be a demand and refusal before the writ will issue.

**Same:** DAMAGES. One injured by the wrongful act of another must
**2** use reasonable efforts to limit the effect of the act; so where a railway company refuses to switch cars onto a private track the injured party cannot refuse to load and unload the same on the main track and then recover as damages a much larger sum than the additional expense would have been.

*Appeal from Woodbury District Court.*— HON. J. F. KENNEDY, Judge.

THURSDAY, JUNE 7, 1906.

ACTION of mandamus to compel the defendant railway company to switch cars on the plaintiff's private track and to recover damages for a failure so to do.    There was a trial to the court, and a judgment for the defendants.    The plaintiff appeals.— *Affirmed.*

*W. E. Gantt,* for appellant.

*Shull, Farnsworth & Sammis (W. H. Farnsworth,* of counsel), for appellees.

SHERWIN, J.— The appellant is a milling corporation operating a gristmill which is located on a private track some 700 feet from the appellee's main line.    This private track was built by the owners of the mill and is under the exclusive control of said owners or the operators of the mill. It has, at all times, been used by the appellee and other roads for switching cars to and from the mill as the necessities of the appellant's business required and under its direction.    For a number of years before the institution of this suit, the Western Car Service Association established certain rules governing the detention of cars by shippers, and providing a charge of $1 per car for each 24 hours of detention by the shipper after 48 hours free detention, and further providing for the collection of said charges, and that no switching would be done on private tracks when the charges were refused.    The rules also provided that in such case cars would be placed on the public or team track for loading or unloading.    On December 2, 1903, the appellant was in arrears for detention charges, on cars held by it, with all the railroads using the private track, and on that date the manager of the Car Service Association wrote appellant calling its attention to the charge, and stating that unless they were adjusted on or before December 5th cars consigned to the Mystic Milling Company would be placed on the public delivery tracks.    No adjustment of the matter was made,

however, and on the 8th of December, the Chicago, Milwaukee & St. Paul Railway Company, which held a demurrage claim against appellant, discontinued switching to the mill, and placed all cars consigned thereto on its public or team track about four blocks from the mill, and immediately notified appellant thereof. On the 9th day of December, the appellant made written demand on the company to resume switching on their private track, and on the next day served notice of this suit. On the 11th of December the company resumed switching to the mill and has ever since continued the service. On the 12th of December the petition herein was filed asking a writ of mandamus and claiming $30,000 damages. The defendant answered alleging, among other defenses, that it was providing the service required by appellant and was at all times ready and willing to do so, provided plaintiff would comply with the rules of the Car Service Association. The appellant argues two propositions at length which we do not think it necessary to determine in this action. The first relates to the right of the defendant company to establish rules governing the detention of cars by the shipper, and the second to the right of appellant to compel the company to switch cars on to and over its private track. Both are questions of so much importance that they should not be determined unless such determination is necessary to a disposition of the case. There are but two real questions before us: (1) Should a writ of mandamus issue under the showing made? and (2) should there have been an award of damages for failure to switch cars to and from the appellant's mill?

When the petition was filed and when the case was heard, the appellee was giving the appellant all the service that it required or asked that the appellee be commanded to perform in the future, and hence there was no occasion for issuing the writ. Section 4341 of the Code says "that the action of mandamus is one brought to obtain an order commanding an inferior.

1. MANDAMUS: SWITCHING CARS: demand and refusal.

tribunal, board, corporation or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust or station." The action thus defined is broadened by section 4343, and it is under the latter section that the writ here is asked. It is a fundamental rule that a mandamus will not be granted in anticipation of a supposed omission of duty. It is therefore incumbent upon the petitioner to show that the defendant is actually in default in the performance of a legal duty then due, and no threats not to perform can take the place of such default. *Chance v. Temple,* 1 Iowa, 180; *Potts v. Tuttle,* 79 Iowa, 253; *Wood v. Farmer,* 69 Iowa, 538; Merrill on Mandamus, sections 221–223; High's Extraordinary Legal Remedies, sections 12, 13; 19 Am. & Eng. Encyc. of Law (2d Ed.) 758, and cases cited. The right involved herein is also a private one, and, in such cases, it is the general rule that there must be a demand and a refusal before the writ will issue. Cases *supra,* and *Scripture v. Burns,* 59 Iowa, 70. See, also, section 4346 of the Code.

While the appellant claimed a large sum as damages for the appellee's failure to switch cars to and from its mill during the three or four days in question, it failed to prove any which are recoverable. During the time, 2. SAME: damages. it made no effort to get its product to or from the cars on the public or team track, and claimed loss of profits and rent of mill as the measure of its damage. Every person who is injured by the wrongful act of another must use reasonable efforts to limit the effect of the act. *Keirnan v. Heaton,* 69 Iowa, 136; *Raridan v. Central Iowa Ry. Co.,* 69 Iowa, 527. *Little v. McGuire,* 43 Iowa, 447. It is very evident that appellant might have moved grain from the cars on the public track to its mill, and the product of its mill to the cars, at a trifling expense compared with the profits on its business during the time, and, such being the case, it had no legal right to refuse or neglect to do so and then demand the greater sum. The cases cited by the ap-

pellant in support of its claim to profits are not in point. They are *Richmond v. Railway Company,* 40 Iowa, 264; *Gibson v. Fischer,* 68 Iowa, 29; *Willis v. City of Perry,* 92 Iowa, 297; *Findlay v. Carson,* 97 Iowa, 537

The judgment was right, and it is *affirmed.*