IN RE DR. WILLIAM BREEN.

UNITED STATES OF AMERICA, Appellee, v. DR. WILLIAM BREEN, Appellant.

DECEMBER 14, 1928.

*Dutcher, Walker & Ries* and *George C. Gorman,* for appellant.

*John Fletcher,* Attorney-general, *Gerald O. Blake,* Assistant Attorney-general, and *Clifford B. Paul,* for appellee.

MORLING, J.—The petition is founded on defendant's conviction in the Federal court "for violation of the Federal statutes and regulations relating to \* \*· \* narcotics," and his suspension was pursuant to Section 2110, Code of 1927, which, as to the matter just quoted is claimed by defendant to be invalid because foreign to the subject-matter of the codifying act by which Section 2110 was enacted, as indicated by the title.

Section 2110 reads as follows:

"When a physician or pharmacist, licensed under the laws of this state, is convicted in any Federal court of this state of a violation of the Federal statutes or regulations relating to intoxicating liquors, or to narcotics, and said judgment has become final, the county attorney of the county where said physician or pharmacist resides shall forthwith file in the office of the clerk of the district court of said county a duly certified copy of said judgment and thereupon said district court, or a judge thereof, shall, on such notice to the defendant in said judgment as the court or judge may prescribe, enter an order suspending for a period of not less than one year nor more than five years the license of such physician or pharmacist to practice his profession in this state. \* \* \*"

The codifying act in which Section 2110 originated and is found (fortieth extra general assembly, Senate File 283), was enacted under the following title:

"An act to amend, revise, and codify Sections nine hundred twenty (920) to nine hundred fifty-one (951), inclusive, of the Compiled Code of Iowa, relating to the sale and transportation of intoxicating liquors under permits."

Sections 920 to 951, Compiled Code, made no mention of the words "narcotics" or "narcotic drugs." In their terms, these sections related only to "intoxicating liquors." The section in reference to holders of manufacturers' permits specified "alcohol, spirituous or vinous liquors." Physicians were mentioned only as hereafter set out. Sections 920 to 951 are found in Chapter 8, Title V, entitled "Intoxicating Liquors." Those sections were confined in their provisions to permits to pharmacists, to wholesale drug corporations, and to manufacturers; to the procedure for obtaining such three classes of permits; to regulation and method of conducting business, and making reports thereunder; to transportation of intoxicating liquors by carriers from or to such permit holders; to penalties for violation by such permit holders of the laws and regulations governing them, including revocation of their permits. Section 936 contained the provision:

"Nothing contained in this chapter shall be construed to prevent licensed physicians from in good faith dispensing liquors as medicines to patients actually sick and under their treatment."

Section 940 permitted, under prescribed regulations, transportation to physicians "in good standing and duly licensed." The qualification of a physician to receive intoxicating liquors consisted in his being a licensed physician, engaged in practice. There was no requirement that he should have a permit to purchase or dispense such liquors, and no provision for cancellation or suspension of physician's license. Section 2110, Code of 1927, under consideration, was not in the bill as introduced, but was inserted by committee amendment, as Section 25-a7, without change of title. The first section of Chapter 8, above referred to, was Section 914, which declared that the term "intoxicating liquor" shall "be construed to mean alcohol, ale, wine, beer, spirituous, vinous, and malt liquor, and all intoxicating liquor whatever." Section 1430, Compiled Code, in the chapter entitled "Pharmacy," contained prohibitions with reference to

coca, cocaine, alpha or beta eucaine, cotton root, ergot, oil of tansy, oil of savin, and derivatives. Sections 1988 and 1992, in the chapter entitled "Inebriates and Drug Habituates," provided for the commitment of addicts to the excessive use of narcotic drugs. (Chapters 156, 173, Code of 1927.) By Section 1, Chapter 43, Acts of the Fortieth General Assembly (the title relating to "narcotic drugs"):

"No person shall have in his possession or under his control any opium, coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, including cocaine, morphine, heroin and codeine, unless it be possessed through having been prescribed, or dispensed, in good faith, by a physician, dentist or veterinary surgeon registered under the laws of Iowa and registered by the United States government under the Harrison Act * * *"

These laws were in the statute books when the various relevant codifying acts were passed. One of the codifying acts of the fortieth extra general assembly was House File 261-A, now appearing as Chapters 155 and 156 of the Code of 1927. The title of this act was as follows:

"An act to amend, revise, and codify Sections fourteen hundred twenty-four (1424), fourteen hundred twenty-seven (1427) to fourteen hundred twenty-nine (1429), inclusive, eighty-eight hundred fifty-two (8852), eighty-eight hundred sixty-four (8864), eighty-eight hundred sixty-five (8865), and Chapter fifteen (15) of Title six (6) of the Compiled Code of Iowa; and Sections fourteen hundred thirty (1430), fourteen hundred thirty-a one (1430-a1), fourteen hundred thirty-one (1431), fourteen hundred thirty-two (1432), and Chapter fourteen-A (14-A) of Title six (6) of the Supplement to the Compiled Code of Iowa, relating to drugs, poisons, narcotics, and abortifacients."

Section 120-a1 of that act, as amended by Chapter 52, Acts of the Forty-first General Assembly, provided:

"For the purpose of this chapter 'narcotic drugs' shall mean: 1. Opium, coca (erthroxylum coca), cocaine, alpha or beta eucaine, morphine, heroin, peyote or the mescale button,

Indian hemp (cannabis indica or cannabis americana), or any derivative of any of said drugs.''

The subdivision following this definition designated the preparations containing these drugs which should be considered within or without the foregoing enumeration. The practice of medicine and surgery was provided for by Chapter 6, Title VI, Compiled Code, 1919, in which were included provisions for revocation of certificate (Sections 1316 to 1318, inclusive). House File 262, fortieth extra general assembly, codified these sections. The original title to this later act set out a number of sections of the Compiled Code. The title did not refer to Sections 1316 to 1318, but did refer to a number of sections regulating the practice of professions, and concluded with the words ''of the Supplement to the Compiled Code of Iowa, relating to the practice of certain professions affecting the public welfare.'' The revocation of professional licenses is now provided for by Section 2492 *et seq.*, Code of 1927, as codified by the enactment of House File 262, fortieth extra general assembly.

The propriety and sufficiency of titles to legislative enactments have been so fully considered in recent cases that further discussion would be superfluous, or repetition. *State v. Gibson,* 189 Iowa 1212; *Clear Lake Co-op. L. S. S. Assn. v. Weir,* 200 Iowa 1293; *In re Estate of Pedersen,* 198 Iowa 166; *Fevold v. Board of Supervisors,* 202 Iowa 1019; *Rains v. First Nat. Bank,* 201 Iowa 140; *Leach v. Commercial Sav. Bank of Des Moines,* 205 Iowa 1154; *State v. Manhattan Oil Co.,* 199 Iowa 1213. Materia medica classifies alcohol as a narcotic. Potter's Therapeutics Materia Medica and Pharmacy (13th Ed.) 38. Legislation regulating possession, use, and disposition of intoxicating liquors, however, occupies an entirely distinct field from that regulating the use and disposition or prescription of narcotics. This is evident from the statutes that have been referred to. The Harrison Act, as in force at the time of the passage of Chapter 43, Acts of the Fortieth General Assembly, above referred to, and at the time of the enactment of Section 2110, Code of 1927, defines the term ''narcotic drugs'' as meaning ''opium, coca leaves, cocaine or any salt, derivative or preparation of opium, coca leaves or cocaine.'' 3 U. S. Compiled Statutes 1916, 1923 Supplement, Section 8800.

Sections 920 to 951 of the Compiled Code, which were to be amended, revised, and codified according to the title to the act in which Section 2110 was enacted, had no reference to narcotics as they were defined, and as the regulation of their possession and use and dispensation was provided for in other statutes. The subject-matter of physicians' licenses and the recodification of the law concerning them were contained in entirely different chapters of the law then in force. While alcohol is a narcotic, its origin, properties, use, and its effect from the popular and legal viewpoint, are so different from those of narcotic drugs, as they are ordinarily defined, and their use and dispensation defined in the statutes, as to require (as are prescribed) entirely different methods of dealing with them. A preparation of opium or cocaine, whether in solid or liquid form, is not thought of, in legislation or popularly, as an intoxicating liquor. The argument in behalf of the prosecution suggests that a Mexican national drink is brewed from "peyote or mescale button," and is used in the same way and for the same purpose as are whisky and alcohol in this country; but in the state of Iowa, this plant is called a narcotic drug, and is so defined by the statutes. It may well be that, as so brewed and used, this preparation would fall within the statutory definition of intoxicating liquors; but that fact, if granted, would give no occasion to one examining the title to Senate File 283, fortieth extra general assembly, to understand that that act, relating "to the sale and transportation of intoxicating liquors under permits," would provide for taking away a physician's license because of conviction of violation of the Harrison Act, providing for the registration and payment of duty by those dispensing or dealing in opium, coca leaves, cocaine, and their derivatives. We need not take time and space to refer further to statutes. The Harrison and kindred narcotic drug acts, the duties of physicians and their responsibilities in prescribing such drugs, solid or liquid, the penalty of revocation of physicians' licenses for disloyalty to such responsibilities, are utterly foreign to the matter of permits to pharmacists, wholesale druggists, and manufacturers to handle intoxicating liquors. In particular cases, the law in relation to drunkenness, intoxicating liquors, and narcotics and the indulgence in those drugs may overlap, though usually they are considered as occupying quite distinct fields. See *Common-*

*wealth v. Detweiler*, 229 Pa. St. 304 (78 Atl. 271) ; Bishop on Statutory Crimes (3d Ed.) 618, Section 972; *Commonwealth v. Whitney*, 65 Mass. 477; *Edwards v. State* (Tex. Cr.), 54 S. W. 589; *Cannon v. State*, 41 Tex. Cr. 467 (56 S. W. 351) ; *Barber v. Barber* (Conn.), 14 Law Rep. 375; *Dawson v. Dawson*, 23 Mo. App. 169; *Youngs v. Youngs*, 130 Ill. 230, 234; 1 Bishop on Marriage and Divorce (6th Ed.) 627. Whether read in connection with antecedent and contemporaneous legislation, state and Federal, or whether interpreted by popular understanding of the language used, the title to Senate File 283, fortieth extra general assembly, was, after the amendment in question as to the matter thereof, misleading and deceptive. Moreover, the subject of a physician's liability to revocation of his professional license because of conviction in the Federal court of violation of the Federal statutes or regulations relating to narcotics is so alien to the subject-matter, purpose, and scope of that act, as indicated or suggested by its title, that the provision therefor as contained in Section 25-a7 (Section 2110, Code of 1927), enacted under that title, must be held to be in violation of Section 29, Article 3, of the Constitution, and void.—*Reversed.*

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT, and WAGNER, JJ., concur.